UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.:  1:03-CR-12-TS |
| | ) | (1:07-CV-305) |
| RIAKOS BARKER | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Riakos Barker's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 163], filed on November 29, 2007. For the reasons stated in this Opinion, the Motion is denied.

**BACKGROUND**

On March 26, 2003, the Defendant was indicted with five counts of aiding and abetting another who knowingly made a false statement and representation in violation of 18 U.S.C. § 924(a)(1–2), and a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After an investigation by the Bureau of Alcohol, Tobacco, and Firearms (ATF), which included statements from the Defendant's sister, Korendi Barker, and from Nykisha Lovelace, as well as from the Defendant himself, the government believed that the two women made "straw purchases" of firearms on behalf of the Defendant.

During the pretrial phase, the Defendant sought unsuccessfully to suppress his statements to police confessing his involvement in the gun purchases. The Court's holding regarding the Defendant's incriminating statements was upheld on appeal. *See United States v. Barker*, 467 F.3d 625, 629 (7th Cir. 2006) (holding the district court correctly determined that because the Defendant was not in custody *Miranda* warnings were not required). However, the Defendant

did benefit from the post-indictment affidavit of his sister, Korendi Barker, in which she recanted any incriminating statements she had made against her brother. Upon receiving this affidavit, the government dismissed the three counts of the Indictment that would have been supported by Korendi's testimony.

During the trial on the remaining counts, the government presented the testimony of an ATF inspector and of Lovelace. Lovelace testified that she used Korendi Barker's identification to purchase two guns for the Defendant. She testified that the Defendant gave her the cash, pointed out which guns to buy, and took the guns after she bought them. Lovelace stated that she used Korendi Barker's gun permit and the fake identification that she had in Korendi's name. Korendi did not make the purchase for her brother because she had to go to work.

Agent Skender, who conducted the investigation of the straw purchases, also testified. Agent Skender testified that the Defendant told him in an interview that he took Lovelace to K's Merchandise to buy the guns, provided her with the money, and told her what guns to buy. Skender also stated that the Defendant explained that Lovelace made the purchase because his sister had to work and Lovelace already had fake identification in Korendi's name. Agent John Phinney, who was present during Skender's interview with the Defendant, offered testimony that corroborated that the Defendant implicated his involvement in the purchases made by Lovelace.

During the cross examination of Agent Skender, he testified that he located the store clerk, Amanda Diers, who sold the guns to Lovelace and prepared a report summarizing her statement. This report had not been disclosed to defense counsel. After the Court reviewed the report *in camera*, it ordered that a copy of the report be provided to the Defendant. In the report, Diers stated that she recalled that the purchaser (Lovelace) was buying guns for her boyfriend.

Defense counsel moved for a mistrial on the basis that the government improperly withheld exculpatory evidence. The Court recessed to give defense counsel an opportunity to interview Diers, and it took the motion for mistrial under advisement. The following day, defense counsel stated that he had spoken to Diers and was withdrawing his motion for mistrial. Diers' trial testimony was consistent with Agent Skender's report. She also testified that she did not recognize the Defendant as the man who was present during the purchases.

The government and the Defendant stipulated that the Defendant, before March 12, 2001, was convicted in a court of a crime punishable by imprisonment for a term exceeding one year, and that the firearms at issue traveled across state boundary lines and met the statutory definition of a firearm.

The Defendant's theory of the case was that Lovelace bought the guns for her boyfriend, Val Smith, not for the Defendant. He argued that Lovelace was not credible and that Diers, who had no vested interest in the case, testified that Lovelace said the guns were for her boyfriend. The Defendant argued that his interview with the ATF agents should have been recorded, and that he did not make the admissions that they testified about.

The jury found the Defendant guilty of the two false purchasing charges and the felon in possession charge.

With the aid of new counsel, the Defendant appealed his conviction. He argued that the district court erred in denying his motion to suppress, that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to provide Diers' statement until the first day of trial, and that his sentence was improperly enhanced. The Defendant also raised the issue whether his trial counsel, Robert Gevers, gave him loyal and zealous representation because he

3

was the former Allen County Prosecuting Attorney. He later withdrew this issue during oral argument, reserving it for a habeas corpus petition. The Court of Appeals affirmed the judgment of the district court.

## ANALYSIS

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). The law is well settled that failure to raise constitutional issues on direct appeal bars consideration of the issues under § 2255 unless cause for the procedural default and prejudice arising from it are shown. *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000); *Rosenwald v. United States*, 898 F.2d 585 (7th Cir. 1990). Establishing that appellate counsel was ineffective for not raising a claim constitutes cause to justify procedural default. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996); *Rosenwald*, 898 F.2d at 587.

In seeking to prove that his counsel provided ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *id.* at 694. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (applying *Strickland* test to claim that appellate counsel rendered

4

ineffective assistance). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

**A.  Testimony of Amanda Diers**

      The Defendant argues that his trial counsel was ineffective for not objecting when the government shifted the burden to the Defendant on the motion for mistrial, and that he was ineffective for withdrawing the motion for mistrial. This argument relates to the discovery of the store clerk, Amanda Diers, and her testimony.

      The Defendant's argument is difficult to grasp. The Defendant places great emphasis on Dier's testimony that she did not recognize the Defendant as evidence of his innocence. Yet, at the same time, the Defendant maintains that it was wrong for his counsel not to demand a mistrial after obtaining her report and being given an opportunity to interview her and present her for testimony. The Defendant claims that the government improperly shifted the burden to the Defendant upon the motion for mistrial.

      This argument is without basis. The government at all times maintained the burden of proving beyond a reasonable doubt that the Defendant was the person who accompanied Lovelace to the store to buy the gun, and that the gun was actually for the Defendant. And the jury remained, at all times, the judges of the facts. That the government did not intend to offer the testimony of Diers did not shift the burden of proof to the Defendant. Moreover, the exchange the Defendant points to as evidence that the government shifted the burden, was limited to a discussion of whether the government violated *Brady*. As the court of appeals found,

there was no *Brady* violation:

> Though discovered at trial, the defense had sufficient time to make use of Agent Skender's report. Gevers had time to find Diers, interview her, and call her as a witness. In fact, Gevers used both the report and Diers' testimony in support of his defense. Gevers even recalled Agent Skender as a witness to question him on his failure to disclose the report. Therefore, the government's failure to disclose Agent Skender's report earlier did not rise to the level of a *Brady* violation because it was not too late for the defense to make use of the evidence.

*Barker*, 467 F.3d at 629.

Further, the Court notes its agreement with the argument of the government in response to the Defendant's submissions on this point as it relates to his counsel's efforts at trial:

> What Barker fails to appreciate, is what his attorney did by learning about the clerk, interviewing her and presenting her for the defense in order to cast doubt on the government's case. Indeed, in closing, the attorney was able to use Diers' testimony to undercut Lovelace—to paint Lovelace as a deal making cooperator trying to set up his client as the fall guy for her dead boyfriend while portraying Diers as a disinterested cashier who had nothing to gain from false testimony and was only there to talk about what she remembered from the gun transaction. It was sound strategy. It gave the defense something to argue in light of Lovelace's testimony and his client's admission. Matters of strategy are not second guessed and in this case—the actions by Attorney Gevers got Barker more than he could ever hope for—a chance at an acquittal. Simply because this strategy was not successful does not mean counsel was ineffective.

(Gov't Resp. 21 DE 168.) Defense counsel's response to learning about the store clerk during Agent Skender's testimony certainly did not fall below an objective standard of reasonableness. To the contrary, it allowed the Defendant to go forward with evidence that was favorable to the Defendant. The decision not to pursue the motion for mistrial was a sound one, far from being unreasonable. Not only was the Defendant able to present the best defense available to him, but there would have been no basis for a mistrial after the Defendant was able to make full use of the report.

In this same ground for relief, the Defendant argues that his counsel was ineffective when

6

he did not move for a judgment of acquittal. Again, the Defendant appears to be relying on the testimony of Diers as proof that the government did not meet its burden. But in doing so, the Defendant changes the import of Diers' testimony. First, he characterizes Diers' testimony as stating that he was not the person who came to the store as alleged in the indictment, rather than what it really was: a statement that she did not recognize the Defendant and that she did not have much interaction with the man accompanying Lovelace. He also ignores the entire body of evidence presented during the trial that supported the jury's verdict. Bearing in mind that it is the exclusive function of the jury to interpret witness credibility, and that all evidence must be evaluated in a light most favorable to the government, a judgment of acquittal may not be granted if, at the time the motion is made, there is sufficient evidence from which a jury could reasonably find the defendant guilty beyond a reasonable doubt. *United States v. Khilchenko*, 324 F.3d 917, 921 (7th Cir. 2003). As such evidence of guilt existed, a motion for judgment of acquittal would have been denied, and it was not objectively unreasonable for his counsel not to make such a motion, or for appellate counsel not to raise it on appeal. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.")

**B.  Dismissal of Grand Jury Indictment**

The Defendant argues that his trial counsel was ineffective for failing to move to dismiss the entire grand jury indictment on the basis of his sister's recantation of her statements. He also states that appellate counsel was ineffective for failing to raise this issue on appeal.

The Defendant acknowledges that Korendi's affidavit led to the government's dismissal

7

of the charges that were supported by her statements. He does not develop any argument to support his claim that the remaining charges of the indictment should have been dismissed. Neither Korendi's affidavit or her previous statements affected the remaining charges, which were supported by evidence wholly apart from Korendi. The Defendant cannot establish that either of his counsels' performance was deficient or that he was prejudiced by their representation, and there is no basis for habeas relief.

**C.  Impeachment of Lovelace**

The Defendant claims that he is entitled to habeas relief because his trial counsel failed to impeach Lovelace when he abandoned his questioning about her boyfriend's death. He argues that the "line of cross-examination was to include proving to the jury that Val Smith's killing may have been the work of the people [Lovelace and Smith] sold the guns to so as to prevent the government's investigation leading back to them, a serious motive for Ms. Lovelace to lie." (DE 163 at 9.)

Although the Defendant presents his theory of defense, he does not identify the specific information withheld from the jury that would have contributed to his theory. There is nothing in the record to suggest that Lovelace would have been able to testify as to who killed Val Smith. As the government points out, the jury was aware that Smith was the father of two of her children, that he had been in prison, that he was from Detroit, that he was killed in Fort Wayne, that he died before the ATF could interview him, and that a gun purchased by Korendi Barker was recovered in Detroit. Moreover, counsel attempted to ask more questions, but the Court sustained objections made by the government. Defense counsel's decision not to continue along

8

the same vein after this is a trial tactic subject to great deference, and does not evidence a failure to exercise reasonable professional judgment. Nor has the Defendant established that the extra questions would have altered the jury's determination that he was the intended recipient of the guns purchased by Lovelace.

Again, the Defendant has not established that his attorney's performance was objectively unreasonable or that it prejudiced him.

### D.  Conflict of Trial Counsel and Ineffectiveness of Appellate Counsel

The Defendant claims that his Sixth Amendment rights were violated because his trial counsel had a conflict of interest. He claims that his appellate counsel was ineffective for withdrawing the issue of his trial attorney's conflict on appeal. He claims that if he was represented by counsel whose loyalties were not divided, that he would not have been convicted by the jury.

The conflict the Defendant identifies is that his attorney, Robert Gevers, was the elected Prosecuting Attorney for Allen County during the time the Defendant was convicted in state court. This fact was not made known to the trial court, by way of motion or otherwise, during the pendency of the Defendant's criminal case. Appellate counsel raised the conflict of issue on appeal, but withdrew it at oral argument.

The Sixth Amendment "entitles defendants to representation by an attorney completely loyal to their cause, unfettered by any conflict of interest." *United States v. Lowry*, 971 F.2d 55, 59 (7th Cir. 1992). A showing of a conflict does not automatically entitle a petitioner to reversal. The Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162 (2002), requires that a

9

petitioner also show adverse effect.

The Defendant has not explained how Mr. Gevers' role as the prosecutor when the Defendant was convicted in state court presented his attorney with the choice between "advancing his own interests above those of his client." *See Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) (setting forth standard for actual conflict). There is no evidence that Mr. Gevers had a substantial role in the previous prosecution of the Defendant, such that his subsequent representation of the Defendant created an actual conflict of interest. Even if the Court accepted the Defendant's bald assertion that his attorney's loyalties were divided, he has not demonstrated that but for this conflict, there is a reasonable likelihood that Mr. Gevers' performance would have been different. *Id.* The state court conviction was not a matter of contention, and the Defendant does not suggest that there is any basis upon which the conviction could have been challenged. Moreover, none of the deficiencies in representation that the Defendant identified in his habeas petition are related to his counsel's former role as the Prosecuting Attorney for Allen County.

The Defendant also faults his appellate counsel for abandoning the conflict of interest issue on appeal. Not only did this not prejudice the Defendant, *see United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991) (noting that a defendant is not barred from bringing an ineffective assistance of counsel claim for the first time in a post-conviction proceeding if the claim is based on extrinsic evidence), but it was a proper strategy given that the appellate court could not consider the extrinsic evidence that would establish Mr. Gevers' prior role.

10

**E.  Evidentiary Hearing**

A court need not grant an evidentiary hearing in all § 2255 cases. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). While a court must grant a hearing if the petitioner alleges facts that, if proven, would entitle him to relief, no hearing is required where the record conclusively shows that the defendant is entitled to no relief. *Id.*; *see also Galbraith v. United States*, 313 F.3d 1001, 1009–10 (7th Cir. 2002) (stating that the threshold determination that a petition has alleged facts that would justify a hearing require the petitioner to submit a sworn affidavit showing what specific facts support his assertions). The Defendant does not indicate what facts an evidentiary hearing would reveal, much less support any such assertions with a sworn affidavit.

> It is the rule of this Court that in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions. Mere unsupported allegations cannot sustain a petitioner's request for a hearing.

*Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir. 1996) (citations, quotations marks, and brackets omitted).

The Motion does not support the Defendant's request for an evidentiary hearing. The Defendant has not offered the Court any objective facts outside the record that would warrant a hearing. Moreover, the record and history of this case demonstrate that he is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 163] is **DENIED**.

11

SO ORDERED on July 15, 2008.

                                                s/ Theresa L. Springmann
                                               THERESA L. SPRINGMANN
                                               UNITED STATES DISTRICT COURT